No. 25-1480

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

Minnesota Chapter of Associated Builders and Contractors, Inc., et al.

Plaintiffs-Appellants,

vs.

Nicole Blissenbach, in her official capacity as Commissioner of the
Minnesota Department of Labor and Industry, et al.

Defendants-Appellees,

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

**BRIEF OF APPELLEES**

_____

KEITH ELLISON
Attorney General
State of Minnesota

JANINE KIMBLE (MN #0392032)
CHRISTY HALL (MN #0392627)
MATTHEW MCGUIRE (MN #0402754)
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2128
(651) 757-1415
janine.kimble@ag.state.mn.us

*Attorneys for Defendants-Appellees*

## SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

In 2024, the Minnesota Office of the Legislative Auditor issued a report on worker misclassification. Misclassifying workers includes when employers treat workers as independent contractors when they are required to treat them as employees. According to the report, misclassification deprives workers of wages and workplace protections; disadvantages law-abiding employers; results in less revenue for state programs; and has a negative impact on the economy. The report further stated, "Minnesota has neither an adequate nor coordinated approach for ensuring that Minnesota workers are properly classified." Later that year, the Legislature amended the multi-factor test that determines whether a worker in the construction industry is an employee or an independent contractor. It also added civil penalties. The statute provides a constitutional framework to address a persistent problem: improper classification of workers in the construction industry.

Because this lawsuit challenges the constitutionality of a state statute, Appellees request twenty minutes of oral argument.

i

# TABLE OF CONTENTS

**Page**

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT ....................i

TABLE OF AUTHORITIES ..................................................................................iv

STATEMENT OF ISSUES ...............................................................................1

STATEMENT OF THE CASE..........................................................................2

I.  FROM 1996 TO 2024, MINNESOTA USED A NINE-PART TEST TO DETERMINE IF CONSTRUCTION WORKERS ARE CORRECTLY CLASSIFIED..........2

II.  ATTORNEY GENERAL MISCLASSIFICATION TASK FORCE AND OFFICE OF THE LEGISLATIVE AUDITOR IDENTIFY RECOMMENDATIONS TO PREVENT MISCLASSIFICATION IN MINNESOTA. ...............................................3

III.  THE LEGISLATURE ADOPTS A NEW 14-PART TEST FOR DETERMINING IF CONSTRUCTION WORKERS ARE CORRECTLY CLASSIFIED. .............................6

IV.  PROCEDURAL HISTORY ...............................................................11

SUMMARY OF ARGUMENT ......................................................................12

ARGUMENT ...............................................................................................13

I.  APPELLANTS LACK STANDING.................................................................13

  A.  Appellants lack standing because they have not demonstrated an injury-in-fact........................................................................14

    1.  Appellants have not shown a history of enforcement against others for similar conduct. ............................................15

    2.  Appellants have not shown an express threat of enforcement against them or their members. ...........................16

    3.  Appellants' argument about their intended course of action does not prove a threat of enforcement as it is not particularized and depends on the conduct of third parties. .........................................................................18

II.  *DATAPHASE* FACTORS AND STANDARD OF REVIEW. .......................21

Appellate Case: 25-1480     Page: 3     Date Filed: 05/23/2025 Entry ID: 5519829

III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT
       CONCLUDED APPELLANTS DID NOT SATISFY THE *DATAPHASE* FACTORS........23

       A.    The district court did not abuse its discretion when it concluded
             Appellants were unlikely to succeed on the merits of their void-
             for-vagueness challenge. ....................................................24

             1.    The standard. ........................................................24

             2.    The statute provides adequate notice. ........................................26

             3.    The statute contains neutral limitations that prevent
                   arbitrary enforcement. ...............................................31

             4.    Appellants' actual disagreement is that the statute is too
                   specific. ..............................................................33

             5.    Heightened scrutiny does not apply.........................................35

       B.    The district court did not abuse its direction when it concluded
             Appellants are unlikely to succeed on their Excessive Fine
             claim… ....................................................................38

             1.    The standard. ........................................................38

             2.    The Eighth Amendment is not implicated because the
                   statute's fines are civil and required to be tailored to
                   specific conduct.......................................................39

             3.    This Court should decline to hold that hypothetical future
                   fines would be unconstitutionally excessive............................40

       C.    The district court did not abuse its discretion when it concluded
             Appellants did not satisfy the remaining *Dataphase* factors. .............43

             1.    Appellants will not suffer irreparable harm from the denial
                   of an injunction. .....................................................43

             2.    The balance of equities and the public interest support
                   denial of an injunction. ...............................................45

CONCLUSION .........................................................................46

Appellate Case: 25-1480     Page: 4     Date Filed: 05/23/2025 Entry ID: 5519829

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Alexis Bailly Vineyard, Inc. v. Harrington*
   931 F.3d 774 (8th Cir. 2019)................................................................. 18

*Austin v. U.S.*
   509 U.S. 602 (1993) ........................................................................... 39

*Babbitt v. United Farm Workers Nat. Union*
   442 U.S. 289 (1979) ........................................................................... 16

*Barmet Aluminum Corp. v. Reilly*
   927 F.2d 289 (6th Cir. 1991)............................................................... 44

*Boos v. Barry*
   485 U.S. 312 (1988) ........................................................................... 26

*Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*
   492 U.S. 257 (1989)............................................................................ 41

*Bucklew v. Precythe*
   587 U.S. 119 (2019) ........................................................................... 39

*California v. Texas*
   593 U.S. 659 (2021) .............................................................. 1, 18, 19, 20

*Capitol Records, Inc. v. Thomas-Rasset*
   692 F.3d 899 (8th Cir. 2012)................................................... 1, 41, 42

*Chalmers v. City of Los Angeles*
   762 F.2d 753 (9th Cir. 1985)............................................................... 36

*Chapman v. United States*
   500 U.S. 453 (1991) ........................................................................... 24

Appellate Case: 25-1480    Page: 5    Date Filed: 05/23/2025 Entry ID: 5519829

*Cigna Corp. v. Bricker*
　103 F.4th 1336 (8th Cir. 2024) ............................................................. 45

*City of Kansas City, Mo. v. Yarco Co.*
　625 F.3d 1038 (8th Cir. 2010) ............................................................. 21

*Clapper v. Amnesty Int'l USA*
　568 U.S. 398 (2013) .................................................................... 13, 14

*D.C. v. City of St. Louis, Mo.*
　795 F.2d 652 (8th Cir. 1986) ............................................................. 30

*Dataphase Sys., Inc. v. C L Sys., Inc.*
　640 F.2d 109 (8th Cir. 1981) ............................................................ 1, 22

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*
　274 F.3d 377 (6th Cir. 2001) ............................................................. 32

*Food & Drug Admin. v. Alliance for Hippocratic Med.*
　602 U.S. 367 (2024) ....................................................................... 13

*FW/PBS, Inc. v. Dallas*
　493 U.S. 215 (1990) ....................................................................... 32

*Geiger v. City of Eagan*
　618 F.2d 26 (8th Cir. 1980) .............................................................. 31

*General Motors Corp. v. Harry Brown's, LLC*
　563 F.3d 312 (8th Cir. 2009) ............................................................. 22

*Grant on behalf of United States v. Zorn*
　107 F.4th 782 (8th Cir. 2024) ............................................................ 41

*Grayned v. City of Rockford*
　408 U.S. 104 (1972) ..................................................................... 1, 25

*Harmelin v. Michigan*
　501 U.S. 957 (1990) .................................................................... 39, 41

Appellate Case: 25-1480　　Page: 6　　Date Filed: 05/23/2025 Entry ID: 5519829

*Hays v. City of Urbana*
104 F.3d 102 (7th Cir. 1997)......................................................................... 20, 21

*Heartland Acad. Cmty. Church v. Waddle*
335 F.3d 684 (8th Cir. 2003)................................................................................ 23

*Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*
813 F.3d 1124 (8th Cir. 2016).............................................................................. 21

*Hill v. Colorado*
530 U.S. 703 (2000).............................................................................................. 25

*Holder v. Humanitarian Law Project*
561 U.S. 1 (2010).................................................................................................. 14

*In re SuperValu, Inc.*
870 F.3d 763 (8th Cir. 2017).......................................................................... 14, 17

*Johnson v. State of Mo.*
142 F.3d 1087 (8th Cir. 1998).............................................................................. 17

*Kolender v. Lawson*
461 U.S. 352 (1983).......................................................................................... 31, 35

*Lance v. Coffman*
549 U.S. 437 (2007).............................................................................................. 15

*Lujan v. Def. of Wildlife*
504 U.S. 555 (1992)......................................................................................... Passim

*Maryland v. King*
567 U.S. 1301 (2012)............................................................................................ 45

*Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*
991 F.3d 880 (8th Cir. 2021).................................................................... 1, 25, 33

*Miller v. California*
413 U.S. 15 (1973).......................................................................................... 27, 28

Appellate Case: 25-1480    Page: 7    Date Filed: 05/23/2025 Entry ID: 5519829

*Moody v. NetChoice, LLC*
603 U.S. 707 (2024) ........................................................................ 39

*Morehouse Enter., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*
78 F.4th 1011 (8th Cir. 2023) .................................................. 22, 45

*North Dakota v. Heydinger*
825 F.3d 912 (8th Cir. 2016) ......................................................... 18

*Packard Elevator v. I.C.C.*
782 F.2d 112 (8th Cir. 1986) ..................................................... 1, 44

*Planned Parenthood of Minn., N.D., S.D. v. Rounds*
530 F.3d 724 (8th Cir. 2008) ........................................................ 22

*Rowles v. Curators of Univ. of Mo.*
983 F.3d 345 (8th Cir. 2020) ........................................................ 25

*Sanzone v. Mercy Health*
954 F.3d 1031 (8th Cir. 2020) ...................................................... 29

*Simon v. E. Kentucky Welfare Rts. Org.*
426 U.S. 26 (1976) ........................................................................ 17

*Smith v. Golden China of Red Wing, Inc.*
987 F.3d 1205 (8th Cir. 2021) ...................................................... 21

*Summers v. Earth Island Institute*
555 U.S. 488 (2009) ................................................. 1, 14, 18, 19

*Susan B. Anthony List v. Driehaus*
573 U.S. 149 (2014) ........................................................... 1, 14, 42

*Tony & Susan Alamo Found. v. Sec'y of Lab.*
471 U.S. 290 (1985) ...................................................................... 34

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2023) ............................................................... 13, 14

Appellate Case: 25-1480   Page: 8   Date Filed: 05/23/2025 Entry ID: 5519829

*United States v. Aleff*
   772 F.3d 508 (8th Cir. 2014)............................................................... 40

*United States v. Bajakajian*
   524 U.S. 321 (1998) .................................................................... 1, 40

*United States v. Barraza*
   576 F.3d 798 (8th Cir. 2009)............................................................... 25

*United States v. Bieri*
   68 F.3d 232 (8th Cir. 1995)................................................................ 40

*United States v. Bramer*
   832 F.3d 908 (8th Cir. 2016)............................................................... 24

*United States v. Nadi*
   996 F.2d 548 (2d Cir. 1993)............................................................... 24

*United States v. Rahimi*
   602 U.S. 680 (2024) ......................................................................... 38

*United States v. Rogan*
   517 F.3d 449 (7th Cir. 2008)............................................................... 41

*United States v. Salerno*
   481 U.S. 739 (1987) .................................................................. 38, 39

*United States v. Stupka*
   418 F. Supp. 3d 402 (N.D. Iowa 2019)............................................. 24

*United States v. Trudell*
   563 F.2d 889 (8th Cir. 1977)............................................................... 25

*United States v. Veasley*
   98 F.4th 906 (8th Cir. 2024) .............................................................. 39

*Video Software Dealers Ass'n v. Webster*
   968 F.2d 684 (8th Cir. 1992)......................................................... 27, 28

Appellate Case: 25-1480    Page: 9    Date Filed: 05/23/2025 Entry ID: 5519829

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*
455 U.S. 489 (1982) ....................................................................... Passim

*Wilbur-Ellis Co., LLC v. Erikson*
103 F.4th 1352 (8th Cir. 2024) ........................................................... 21

*Winter v. Natural Res. Def. Council, Inc.*
555 U.S. 7 (2008) .................................................................................. 21

**State Cases**

*Guhlke v. Roberts Truck Lines*
128 N.W.2d 324 (Minn. 1964) ............................................................. 34

*Hammes v. Suk*
190 N.W.2d 478 (Minn. 1971) ............................................................. 34

*Holzemer v. Minn. Milk Co.*
259 N.W.2d 592 (Minn. 1977) ............................................................. 34

*Matter of Surveillance and Integrity Review*
996 N.W.2d 178 (Minn. 2023) ............................................................. 26

*Nelson v. Levy*
796 N.W.2d 336 (Minn. Ct. App. 2011) ............................................. 27

*Nelson v. Schlener*
859 N.W.2d 288 (Minn. 2015) ............................................................. 26

*St. Croix Sensory Inc. v. Dep't of Emp. & Econ. Dev.*
785 N.W.2d 796 (Minn. Ct. App. 2010) ............................................. 28

*State v. Kueny*
215 N.W.2d 215 (Iowa 1974) .............................................................. 30

*State v. Newell*
Case No. 27-CR-23-445 (Henn. Cnty. Dist. Ct. Jan. 6, 2023) ............................ 25

*Unzen v. City of Duluth*
683 N.W.2d 875 (Minn. Ct. App. 2004) ............................................. 34

ix

## Federal Constitutional Provisions

U.S. Const. amend. VIII ............................................................... 1

U.S. Const. amend. XIV ............................................................... 1

## State Statutes

1996 Minnesota Laws Ch. 374 .................................................... 2

Minn. Ch. 14.57-62 ....................................................................... 32

Minn. Stat. § 8.01 ......................................................................... 37

Minn. Stat. § 8.31 ....................................................................... 3, 10

Minn. Stat. § 14.045 ...................................................................... 41

Minn. Stat. § 14.045, subds. 1-3 ............................................. 37, 40

Minn. Stat. § 14.63 ................................................................. 32, 44

Minn. Stat. § 177.27, subd. 4 ............................................. 10, 32, 33

Minn. Stat. § 181.1721 ............................................................... 3, 10

Minn. Stat. § 181.722, subd. 4 (2023) ......................................... 3

Minn. Stat. § 181.723 .......................................................... Passim

Minn. Stat. § 181.723, subd. 4(b)(2) (2023) ............................... 29

Minn. Stat. § 181.723, subd. 4 (2023) ...................................... 3, 9

Minn. Stat. § 181.723, subd. 4 ..................................................... 6

Minn. Stat. § 181.723, subd. 4(b) ............................................... 30

Minn. Stat. § 181.723, subd. 7(g)(2)-(4) ...................................... 9

Minn. Stat. § 181.723, subd. 7(h) ...................................................... 9

Minn. Stat. § 181.723, subd. 12(h) .................................................... 33

Minn. Stat. § 326B.081, subd. 3 ....................................................... 31

Minn. Stat. § 326B.082, subd. 7(a) ................................................... 31

Minn. Stat. § 326B.082, subd. 8 ................................................. 10, 32

Minn. Stat. § 326B.082, subd. 11(b)(1)-(2) ...................................... 31

Minn. Stat. § 326B.082, subd. 12 .............................................. 10, 31

Minn. Stat. § 326B.083, subd. 3(c) ............................................ 10, 31

Minn. Stat. § 609.52, subd. 1(13) .................................................... 35

Minn. Stat. § 645.08(1) ................................................................... 26

**Other Authorities**

Advisory Task Force on Worker Misclassification, Minnesota Attorney General's Office, https://www.ag.state.mn.us/Taskforce/Misclassification/ ....................3

*The American Heritage College Dictionary* (3d ed. 1993) ................................ 28

*The American Heritage Dictionary of the English Language* (3d ed. 1992). .. 28, 29

Chet Bodin, *Small Business Success*, DEED, (Dec. 2017), https://mn.gov/deed/newscenter/publications/review/december-2017/small-business-success.jsp?fbclid=IwAR1lI5GomBlAZ_gBVOz6NqzFpSgZ9nk1mdc7hXWhKrs NweBpCSP9mESUBEs ...............................................................................4

*Employee Misclassification*, Minn. Dep't of Labor & Industry, https://www.dli.mn.gov/sites/default/files/pdf/presentation_employee_misclassific ation.pdf, *archived at* https://perma.cc/L8KD-JM2T. ...................................11, 27

Appellate Case: 25-1480   Page: 12   Date Filed: 05/23/2025 Entry ID: 5519829

HF 5247.........................................................................................................6

HF 5247, 4th Engrossment – 93d Leg. (2023–2024), Article 10, Section 8 ............6

House Labor & Industry Finance & Policy Committee, March 5, 2024,
*available at* https://www.youtube.com/watch?v=Bg2FIliLG-k ………………6, 36

*Independent Contractors*, submitted to Attorney General Task Force on Jan. 8, 2024,
https://www.ag.state.mn.us/Taskforce/Misclassification/Meetings/20240108/Data_
IndependentContractors.pdf ....................................................................................4

*In the Matter of Arise Virtual Solutions*, Settlement Agreement (unfiled) (Ramsey
Cnty.),
https://www.ag.state.mn.us/Office/Communications/2024/docs/Arise_AoD.pdf......37

Frank Manzo IV, "Construction Wage Theft Costs WI, MN, and IL Taxpayers
$362 Million Per Year," Midwest Economic Policy Institute (Jan. 14, 2021), at
https://midwestepi.org/2021/01/14/construction-wage-theft-costs-wi-mn-and-il-
taxpayers-362-million-per-year/, *archived at* https://perma.cc/9PLE-DVBY .........6

*Worker Misclassification*, Office of the Legislative Auditor, at 1 (May 2024),
https://www.auditor.leg.state.mn.us/ped/pedrep/2024-worker-misclassification.pdf,
*archived at* https://perma.cc/R8GH-NTMM ("OLA Report").......................Passim

Appellate Case: 25-1480    Page: 13    Date Filed: 05/23/2025 Entry ID: 5519829

# STATEMENT OF ISSUES

**I.    Do Appellants have standing?**

Most Apposite Authorities:
*California v. Texas*, 593 U.S. 659 (2021)
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)
*Summers v. Earth Island Institute*, 555 U.S. 488 (2009)
*Lujan v. Def. of Wildlife*, 504 U.S. 555 (1992)

**II.   Did the district court abuse its discretion when it concluded that Appellants are unlikely to succeed on the merits of their void-for-vagueness claim?**

Most Apposite Authorities:
*Grayned v. City of Rockford*, 408 U.S. 104 (1972)
*Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880 (8th Cir. 2021)
U.S. Const. amend. XIV
Minn. Stat. § 181.723

**III.  Did the district court abuse its discretion when it concluded that Appellants are unlikely to succeed on the merits of their Excessive Fines claim?**

Most Apposite Authorities:
*United States v. Bajakajian*, 524 U.S. 321 (1998)
*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012)
U.S. Const. amend. VIII
Minn. Stat. § 181.723

**IV.   Did the district court abuse its discretion when it concluded Appellants did not satisfy the remaining *Dataphase* factors?**

Most Apposite Authorities:
*Packard Elevator v. I.C.C.*, 782 F.2d 112 (8th Cir. 1986)
*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981)

Appellate Case: 25-1480    Page: 14    Date Filed: 05/23/2025 Entry ID: 5519829

## STATEMENT OF THE CASE

**I.**    **FROM 1996 TO 2024, MINNESOTA USED A NINE-PART TEST TO DETERMINE IF CONSTRUCTION WORKERS ARE CORRECTLY CLASSIFIED.**

In 1996, Minnesota adopted a nine-part test for construction contractors to use to determine whether individuals are employees or independent contractors. 1996 Minnesota Laws Ch. 374.

(a) An individual is an independent contractor and not an employee of the person for whom the individual is performing services in the course of the person's trade, business, profession, or occupation only if the individual:

(1) maintains a separate business with the individual's own office, equipment, materials, and other facilities;

(2)(i) holds or has applied for a federal employer identification number or (ii) has filed business or self-employment income tax returns with the federal Internal Revenue Service if the individual has performed services in the previous year;

(3) is operating under contract to perform the specific services for the person for specific amounts of money and under which the individual controls the means of performing the services;

(4) is incurring the main expenses related to the services that the individual is performing for the person under the contract;

(5) is responsible for the satisfactory completion of the services that the individual has contracted to perform for the person and is liable for a failure to complete the services;

(6) receives compensation from the person for the services performed under the contract on a commission or per-job or competitive bid basis and not on any other basis;

(7) may realize a profit or suffer a loss under the contract to perform services for the person;

2

(8) has continuing or recurring business liabilities or obligations; and

(9) the success or failure of the individual's business depends on the relationship of business receipts to expenditures.

Minn. Stat. 181.723, subd. 4 (2023).[1] A construction worker, who is not an independent contractor, had the ability to bring a civil suit seeking damages. Minn. Stat. § 181.722, subd. 4 (2023). The Department of Labor and Industry had enforcement authority under Sections 326B.081-.085. The Attorney General also had enforcement authority. *See* Minn. Stat. §§ 181.1721, 8.31.

## II. ATTORNEY GENERAL MISCLASSIFICATION TASK FORCE AND OFFICE OF THE LEGISLATIVE AUDITOR IDENTIFY RECOMMENDATIONS TO PREVENT MISCLASSIFICATION IN MINNESOTA.

In 2023, the Attorney General convened an Advisory Task Force on Worker Misclassification. He explained,

> Misclassifying workers hurts not only those who are misclassified and their families, it hurts all Minnesotans, including businesses who do the right thing by their employees by playing by the rules, and every Minnesota taxpayer who has to make up the slack for law breaking employers.

Advisory Task Force on Worker Misclassification, Minnesota Attorney General's Office, https://www.ag.state.mn.us/Taskforce/Misclassification/ (last visited May 23, 2025). The Task Force's mission was to gather information about the problem and make practical recommendations to end the problem. *Id.* According to the U.S.

---

[1] *See* Joint Appendix ("App.") 196-198; R. Doc. 23-1, at 2-4 (2023 version of Section 181.723).

Census Bureau, Minnesota has over 397,000 non-employer businesses or residents who are self-employed.[2] After holding meetings across the state for six months, the Task Force voted to adopt a policy proposal for the Legislature, which became the misclassification bills HF4444/SF4483. (App. 203; R. Doc. 23-1, at 9.)

In May 2023, the Legislative Audit Commission directed Minnesota's Legislative Auditor to update its 2007 report on "Misclassification of Employees as Independent Contractors."[3] According to the Legislative Auditor's 2024 report, the misclassification of workers affects workers and employers in Minnesota by depriving workers of wages and workplace protections; disadvantages law-abiding employers; results in less revenue for state programs; and has a negative impact on the economy. (OLA Report, at 1.) The Legislative Auditor's evaluation focused on Minnesota's approach to classifying workers in general and ensuring that employees who were classified as independent contractors were not misclassified. (*Id*. at 2.)

---

[2] Chet Bodin, *Small Business Success*, DEED, (Dec. 2017), https://mn.gov/deed/newscenter/publications/review/december-2017/small-business-success.jsp?fbclid=IwAR1lI5GomBlAZ_gBVOz6NqzFpSgZ9nk1mdc7hXWhKrsNweBpCSP9mESUBEs (last visited May 23, 2025) (cited in *Independent Contractors*, submitted to Attorney General Task Force on Jan. 8, 2024, https://www.ag.state.mn.us/Taskforce/Misclassification/Meetings/20240108/Data_IndependentContractors.pdf).

[3] *Worker Misclassification*, Office of the Legislative Auditor, at 1 (May 2024), https://www.auditor.leg.state.mn.us/ped/pedrep/2024-worker-misclassification.pdf, *archived at* https://perma.cc/R8GH-NTMM ("OLA Report").

The Legislative Auditor recommended new legislation because many of the issues discussed in the 2007 report persisted. (*Id.* at 21.) The Legislative Auditor concluded that Minnesota still lacked a sufficient "approach for ensuring that Minnesota workers are properly classified." (*Id.*)

Several Minnesota state agencies have regulatory authority over worker misclassification. The main ones are the Minnesota Department of Labor and Industry (DLI), the Minnesota Department of Employment and Economic Development (DEED), and the Minnesota Department of Revenue (DOR). These three agencies "generally use different tests or standards to determine a worker's classification, even if one agency confirmed that an employer misclassified a worker, the other agency would still need to make its own determination." (*Id.* at 23.)

The OLA Report recommended in 2024—as it did in 2007—that Minnesota enact common criteria for determining worker classification when possible. (*Id.* 26.) Additionally, the OLA Report noted that DLI, DEED, and DOR do not have many requirements in law specific to addressing worker misclassification. (*Id.* at 27.) The Legislative Auditor recommended: "If the Legislature would like agencies to take a more active role in addressing worker misclassification, the Legislature should direct agencies to do so in law." (*Id.* at 29.)

5

## III. THE LEGISLATURE ADOPTS A NEW 14-PART TEST FOR DETERMINING IF CONSTRUCTION WORKERS ARE CORRECTLY CLASSIFIED.

In 2024, the Minnesota Legislature acted on the Legislative Auditor's recommendations. In doing so, the Legislature heard testimony from many stakeholders. For example, a representative for the union LiUNA testified about how widespread worker misclassification is in the construction industry.[4] She directed the Legislature's attention to a study by Midwest Economic Policy Institute that concluded in 2020 that over 30,000 construction workers in Minnesota (23% of the workforce) were either misclassified or paid off the books in cash.[5] Appellant Minnesota Chapter of Associated Builders and Contractors, Inc. (MNABC) testified in opposition to the bill. MNABC argued that it was unclear what was wrong with the nine-factor test, and it asked for an effective date later than August 1.[6]

The worker misclassification bill was added to the omnibus bill that was signed by the Governor on May 24, 2024. *See* HF 5247, 4th Engrossment – 93d Leg. (2023–2024), Article 10, Section 8. It revised Section 181.723, subd. 4—the

---

[4] House Labor & Industry Finance & Policy Committee, March 5, 2024, *available at* https://www.youtube.com/watch?v=Bg2FIliLG-k (32:48-33:19).

[5] *Id.* (referring to Frank Manzo IV, "Construction Wage Theft Costs WI, MN, and IL Taxpayers $362 Million Per Year," Midwest Economic Policy Institute (Jan. 14, 2021), at https://midwestepi.org/2021/01/14/construction-wage-theft-costs-wi-mn-and-il-taxpayers-362-million-per-year/, *archived at* https://perma.cc/9PLE-DVBY.

[6] House Labor & Industry Finance & Policy Committee, March 5, 2024, *available at* https://www.youtube.com/watch?v=Bg2FIliLG-k (starting at 54:59; *see also* 56:00-56:13; 57:50-58:29). Counsel Tom Revnew also testified. *Id.* at 58:54.

Appellate Case: 25-1480    Page: 19    Date Filed: 05/23/2025 Entry ID: 5519829

independent contractor test for the construction industry. With the change, effective

March 1, 2025, the test has 14 parts:

(a) An individual is an independent contractor and not an employee of the person for whom the individual is providing or performing services in the course of the person's trade, business, profession, or occupation only if the individual is operating as a business entity that meets all of the following requirements at the time the services were provided or performed:

(1) was established and maintained separately from and independently of the person for whom the services were provided or performed;

(2) owns, rents, or leases equipment, tools, vehicles, materials, supplies, office space, or other facilities that are used by the business entity to provide or perform building construction or improvement services;

(3) provides or performs, or offers to provide or perform, the same or similar building construction or improvement services for multiple persons or the general public;

(4) is in compliance with all of the following:

(i) holds a federal employer identification number if required by federal law;

(ii) holds a Minnesota tax identification number if required by Minnesota law;

(iii) has received and retained 1099 forms for income received for building construction or improvement services provided or performed, if required by Minnesota or federal law;

(iv) has filed business or self-employment income tax returns, including estimated tax filings, with the federal Internal Revenue Service and the Department of Revenue, as the business entity or as a self-employed individual reporting income earned, for providing or performing building construction or improvement services, if any, in the previous 12 months; and

(v) has completed and provided a W-9 federal income tax form to the person for whom the services were provided or performed if required by federal law;

(5) is in good standing as defined by section 5.26, if applicable;

(6) has a Minnesota unemployment insurance account if required by chapter 268;

(7) has obtained required workers' compensation insurance coverage if required by chapter 176;

(8) holds current business licenses, registrations, and certifications if required by chapter 326B and sections 327.31 to 327.36;

(9) is operating under a written contract to provide or perform the specific services for the person that:

(i) is signed and dated by both an authorized representative of the business entity and of the person for whom the services are being provided or performed;

(ii) is fully executed no later than 30 days after the date work commences;

(iii) identifies the specific services to be provided or performed under the contract;

(iv) provides for compensation from the person for the services provided or performed under the contract on a commission or per-job or competitive bid basis and not on any other basis; and

(v) the requirements of item (ii) shall not apply to change orders;

(10) submits invoices and receives payments for completion of the specific services provided or performed under the written proposal, contract, or change order in the name of the business entity. Payments made in cash do not meet this requirement;

(11) the terms of the written proposal, contract, or change order provide the business entity control over the means of providing or performing the specific services, and the business entity in fact controls the provision or performance of the specific services;

8

(12) incurs the main expenses and costs related to providing or performing the specific services under the written proposal, contract, or change order;

(13) is responsible for the completion of the specific services to be provided or performed under the written proposal, contract, or change order and is responsible, as provided under the written proposal, contract, or change order, for failure to complete the specific services; and

(14) may realize additional profit or suffer a loss, if costs and expenses to provide or perform the specific services under the written proposal, contract, or change order are less than or greater than the compensation provided under the written proposal, contract, or change order.

Minn. Stat. § 181.723, subd. 4 (2024) (eff. Mar. 1, 2025).[7] The revision also added the penalties:

(2) a penalty of up to $10,000 for each individual the person failed to classify, represent, or treat as an employee pursuant to this section;

(3) a penalty of up to $10,000 for each violation of this subdivision; and

(4) a penalty of $1,000 for any person who delays, obstructs, or otherwise fails to cooperate with the commissioner's investigation. Each day of delay, obstruction, or failure to cooperate constitutes a separate violation.

Minn. Stat. § 181.723, subd. 7(g)(2)-(4). Compensatory damages are addressed in subdivision 7(g)(1). Violations of Section 181.723 may be investigated or enforced under the DLI Commissioner's authority. Minn. Stat. § 181.723, subd. 7(h).

---

[7] *See* Add. 25-29; App. 205-209; R. Doc. 23-1, at 11-15 (the 2024 version of Section 181.723). The 2024 version of Section 181.723 is referred to herein as "the statute." The effective date of March 1, 2025, for subdivision 4 can be found at Laws 2024, chapter 127, article 10, section 8, the effective date. All other changes to Section 181.723 (including the penalties) were effective July 1, 2024.

9

Just like the previous version, it remains true that DLI has enforcement authority. *See* Minn. Stat. § 177.27, subd. 4. Likewise, the Attorney General still has enforcement authority. *See* Minn. Stat. §§ 181.1721, 8.31. And there is still a private right of action. Minn. Stat. § 181.171, subd. 1.

A violation of § 181.723 may result in DLI issuing a compliance order under Minnesota Statutes Section 177.27, subdivision 4.[8] Subdivision 4 reads in relevant part:

> The department shall serve the order upon the employer or the employer's authorized representative in person or by certified mail at the employer's place of business. An employer who wishes to contest the order must file written notice of objection to the order with the commissioner within 15 calendar days after being served with the order. **A contested case proceeding** must then be held in accordance with sections 14.57 to 14.69 or 181.165. If, within 15 calendar days after being served with the order, the employer fails to file a written notice of objection with the commissioner, the order becomes a final order of the commissioner.

Minn. Stat. § 177.27, subd. 4 (emphasis added).

---

[8] Section 326B.081, subd. 3, also incorporates the statute in its definition of applicable law. Pursuant to Section 326B.082, subd. 7(a), and 326B.082, subd. 11(b)(1)-(2), DLI may issue licensing or administrative orders for violations of Section 181.723. *See also* Minn. Stat. § 326B.082, subd. 8 (administrative proceedings to contest the administrative order); Minn. Stat. § 326B.082, subd. 12 (providing for contested-case hearings under chapter 14); Minn. Stat. § 326B.083, subd. 3(c) (addressing administrative and licensing orders with penalties and an administrative law judge's review).

Appellate Case: 25-1480     Page: 23     Date Filed: 05/23/2025 Entry ID: 5519829

DLI issued an FAQ document and PowerPoint to educate the public about the meaning of the statute.[9]

## IV. PROCEDURAL HISTORY

On February 12, 2025, nearly nine months after the Governor signed the bill amending the statute, Appellants filed this lawsuit. (App. 1; R. Doc. 1.) Relevant here, the Complaint alleges the statute is unconstitutionally vague and violates the Excessive Fines Clause of the Eighth Amendment.[10]

On February 13, Appellants filed a motion for an ex parte temporary restraining order and a preliminary injunction to enjoin Appellees from enforcing the statute. (App. 58; R. Doc. 8, at 2; App. 2, at ¶ 4; R. Doc. 12, at 2 ¶ 4.) Appellants sought expedited relief. (App. 57; R. Doc. 8, at 1.) Also on February 13, the district court set and held a status conference. (App. 189-190; R. Doc. 16 (text only).) The district court established a briefing schedule and set the hearing for February 26, 2025. (App. 191-92; R. Doc. 20 (text only).) The district court denied Appellants' motions, (Addendum ("Add.") 7-22; App. 210-225; R. Doc. 28), and

---

[9] *See* App. 165-176; R. Doc. 12, at 105-16; *Employee Misclassification*, Minn. Dep't of Labor & Industry, https://www.dli.mn.gov/sites/default/files/pdf/presentation_employee_misclassification.pdf, *archived at* https://perma.cc/L8KD-JM2T.

[10] The Complaint also asserts preemption and procedural due process claims. (Add. 28-33.) Those claims are not at issue in this appeal.

entered judgment, (Add. 23; App. 226; R. Doc. 29). Appellants filed a notice of appeal on March 7, 2025. (App. 228-230; R. Doc. 30.)[11]

## SUMMARY OF ARGUMENT

Appellants lack standing because they cannot establish an injury-in-fact. They bring this pre-enforcement challenge to a business regulation but fail to demonstrate a concrete or particularized harm or the risk of imminent enforcement. Even if the Appellants had standing, the district court did not abuse its discretion when it denied a preliminary injunction. As for vagueness, the statute provides fair notice of the test and it does not encourage arbitrary enforcement. On the contrary, the scheme Appellants propose is one that would fall back on common law tests, which are vaguer and less specific than the 14-factor test. Further, Appellants argue in conclusory fashion that certain words or phrases are vague. But basic principles of statutory interpretation show that they are not. The district court likewise did not abuse its discretion when it concluded Appellants are unlikely to succeed on their Excessive Fine Clause claim because this Statute is civil rather than criminal and because—in this pre-enforcement posture—there is no conduct or fine to evaluate. Finally, the district court did not abuse its discretion when it concluded Appellants did not meet the remaining *Dataphase* factors and denied the motion for preliminary

---

[11] Pursuant to the parties' stipulation, the district court stayed proceedings pending this appeal. (R. Doc. 37.)

12

injunction and temporary restraining order, concluding Appellants' alleged injuries are economic and the State has a strong interest in enforcing the statute.

## ARGUMENT

### I.  APPELLANTS LACK STANDING.

Appellants' lack Article III standing to challenge the statute. There is no principle "more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2023) (standing ensures federal courts exercise "their proper function in a limited and separated government" (citation omitted)).

To demonstrate Article III standing, Appellants bear the burden of showing they have (1) "suffered an injury in fact"; (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, because "'the plaintiff is not himself

13

the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Lujan*, 504 U.S. at 562). Appellants lack standing because they have not demonstrated an injury-in-fact.

> **A.** **Appellants lack standing because they have not demonstrated an injury-in-fact.**

A plaintiff's injury must be "concrete", i.e. "real, and not abstract," *TransUnion*, 594 U.S. at 424, and particularized, *Lujan*, 504 U.S. at 560. Appellants attempt to establish their standing in this pre-enforcement challenge by arguing they are injured by the possibility of enforcement of the statute. To establish an injury in a pre-enforcement suit, a plaintiff must show a "credible threat of enforcement." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Appellants "must demonstrate that 'the threatened injury is *certainly* impending, or there is a substantial risk that the harm will occur.' " *In re SuperValu, Inc*., 870 F.3d 763, 769 (8th Cir. 2017) (some internal quotation marks omitted), quoting *Driehaus*, 573 U.S. at 158. "[P]ossible future injury" is insufficient. *Clapper*, 568 U.S. at 409 (emphasis in original). A plaintiff may establish a cognizable pre-enforcement injury where there was either a history of enforcement against others for similar conduct, or an express threat of enforcement against the plaintiff. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010).

14

### 1. Appellants have not shown a history of enforcement against others for similar conduct.

Here, Appellants have not alleged a history of enforcement, either civil or criminal, by the Appellees of the statute or its predecessor against themselves nor have they identified enforcement against other members of the construction industry. Appellants' theory that they risk criminal prosecution for violating this civil statute is especially weak. As Appellees argued to the district court, counsel has not located a single criminal prosecution under the statute. (R. Doc. 22, at 19 n.16.)

Appellants suggest that enforcement is imminent because Appellee Ellison has a "history of going after employers for alleged employee misclassification." (App. Br. 18.) Appellants also point to Appellee Ellison's past enforcement of a *different* statute against Arise Virtual Solutions, a case involving gig workers in the customer service industry as evidence that the statute will be enforced against them. (App. 11; R. Doc. 1, at ¶ 28; App. 72-73; R. Doc. 12, at 12-13.) Again, Appellants must allege that the future injury is directly related to both the statute and themselves in a particularized manner. Instead, Appellants attempt to draw comparisons between themselves and past enforcement against different companies in different industries and with different statutes. Their speculative fears are an "undifferentiated, generalized grievance about the conduct of government" insufficient to establish standing. *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

15

### 2. Appellants have not shown an express threat of enforcement against them or their members.

Appellants likewise have not proven an express threat of enforcement against them or their members. While Appellants argue that Appellees could enforce the statute against them in the future, conjecture is insufficient to establish standing. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 304 (1979).

Appellants allege that Appellee Ellison will enforce the statute against its members because the Minnesota Attorney General created a task force to address worker misclassification. (App. Br. 18.) The task force's purpose was to "make practical, workable recommendations to the Legislature, State agencies, and other government, industry, nonprofit organizations and advocates about how we can put an end to the problem." *Id*. It issued recommendations in December 2024, and it has not met since then. (App. 69; R. Doc. 12, at 9.) A task force about general worker misclassification, with no authority to either make law or enforce it, does not create an imminent threat of enforcement. The documents Appellants cite in support of their standing argument do not mention any of the Appellants, civil or criminal enforcement, or the statute or its predecessor. Appellants attempt to paint a broad picture of Appellee Ellison's interests in worker misclassification, but fail to allege anything specific to themselves or their members.

As to Appellee DLI, Appellants argue that DLI seeks additional resources from the Minnesota Legislature to enforce worker misclassification laws in both

16

construction and non-construction industries. (App. Br. 18-19.) Appellants cite to budget proposals by DLI and the Governor for 2026–2027. (App. Br. 19.) Appellants speculate that DLI will use those additional resources to enforce the statute against Appellants, and that they will impose fines and bankrupt Appellants' businesses at some non-specific point in the future.

What Appellants fail to mention is that those budget proposals are just that: proposals. And even if the Minnesota Legislature passes a budget that includes more funding for misclassification enforcement, Appellants have still not alleged any facts indicating a particularized threat of enforcement that is "*certainly* impending." *In re SuperValu, Inc*., at 769. Appellants' speculative theory is insufficient to establish standing because, "a number of things must occur before appellants will suffer an actual or even an imminent injury," *Johnson v. State of Mo*., 142 F.3d 1087, 1089-90 (8th Cir. 1998). Most, if not all, of Appellants' fears about DLI's increased enforcement budget are difficult, if not impossible, to predict and impermissibly require speculative inferences to establish their injury. *See, e.g., Simon v. E. Kentucky Welfare Rts. Org*., 426 U.S. 26, 45 (1976) (plaintiffs lacked standing because "[s]peculative inferences are necessary to connect their injury to the challenged actions" of the government).

### 3. Appellants' argument about their intended course of action does not prove a threat of enforcement as it is not particularized and depends on the conduct of third parties.

Appellants also argue that they have shown a credible threat of enforcement because they intend to engage in a course of action within the plain text of the statute, namely doing business with subcontractors. *See Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) ("Rather, when a course of action is within the plain text of a statute, a "credible threat of prosecution" exists.") (citing *North Dakota v. Heydinger*, 825 F.3d 912, 917 (8th Cir. 2016)). But, "where a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is not precluded but it is ordinarily substantially more difficult to establish." *California v. Texas*, 593 U.S. 659, 675 (2021) (quoting *Lujan*, 504 U.S. at 562) (cleaned up). This theory does not save standing, however, because Appellants' course of conduct is not particularized and it depends on the conduct of third parties.

None of the Appellants' alleged plans to engage in a course of conduct regulated by the statute are particular or concrete. In *Summers v. Earth Island Institute*, the Supreme Court ruled that environmental groups lacked standing to challenge a Forest Service regulation exempting certain timber salvage sales from the notice and comment period otherwise required by law. 555 U.S. at 490. The Court rejected the plaintiffs' affidavits alleging "plans to visit several unnamed

18

national forests in the future," as insufficient because, among other reasons, "it [did] not identify any particular site" or "particular timber sale." *Id*. at 495; *see also California v. Texas*, 593 U.S. at 671 (holding that being the "object" of a challenged government action was not sufficient to establish standing, where there was no actual or threatened enforcement). Similarly, Appellants have not identified any particular project or any particular subcontractor that will violate the statute resulting in enforcement that will cause actual or imminent harm.

Appellants argue that the statute will cause certain, imminent injury because they must either comply with the statute or fail to comply with the statute and face penalties. (*See* R. Doc. 11, at 18.) The supporting affidavits similarly allege:

> Moreover, if the Statute goes into effect, JMC[12] is confronted with this disturbing reality: (1) treat subcontractors' and sub subcontractors' workers as its employees, incur significant expenses to do so (i.e., pay employee specific wages and benefits, which would significantly increase the labor costs for JMC), and risk financial harm; or (2) fail to treat those workers as its employees and face compensatory damages, and monetary and criminal penalties. Depending on the level of financial harm, JMC would have to take austerity measures to survive as a business, which may include obtaining financing to fund any additional expenses. And if the financial harm is severe, JMC would have no choice but to consider bankruptcy or shutting down its operations.

---

[12] This paragraph appears in two supporting affidavits. (App. 38-39; R. Doc. 2, at ¶ 13; App. 46; R. Doc. 3, at ¶ 15.) The third affidavit states the third company faces a similar choice: comply or face penalties; but the wording is different. (App. 55-56; R. Doc. 4, at ¶ 18.)

Appellate Case: 25-1480    Page: 32    Date Filed: 05/23/2025 Entry ID: 5519829

(Add. 38-39; R. Doc. 2, at ¶ 13.) Essentially, Appellants argue that the cost of complying with the statute constitutes an injury conveying standing because they must treat all of their subcontractors' and sub subcontractors' workers as employees, increasing their business costs. However, this argument relies on the assumption that they will contract with subcontractors and sub subcontractors who will misclassify their workers and fail to treat them as employees. That causal chain is insufficient to convey standing because it is dependent on the actions of the subcontractors who are not before the Court. *California v. Texas*, 593 U.S. at 675. Appellants ask the Court to speculate that its subcontractors will certainly violate the law, creating liability for Appellants. These types of speculative injuries are not sufficient to establish Art. III standing. *See Lujan*, 504 U.S. at 561.

Appellants' standing theory boils down to generalized fears that they will be held liable for contracting with subcontractors who do not comply with the statute. But Appellants do not offer any affidavits from the subcontractors they fear will violate the statute, nor do they identify them. Their alleged imminent harm rests upon a course of conduct by independent third parties—subcontractors—who are not before the Court.

Appellants cite *Hays v. City of Urbana*, 104 F.3d 102 (7th Cir. 1997), to argue that they need only show they must pay to comply with the statute. *Hays* supports Appellees' argument. In that case, the court concluded the plaintiff landlords did not

20

have standing. Although they alleged the cost of complying with the Section 8 program would be costly, they had not alleged that any of their current or potential tenants could receive Section 8 assistance at their properties. *Id.* at 104. Appellants have likewise not alleged that certain workers are treated as independent contractors and that it would be expensive for Appellants to follow the fourteen-factor test so that the workers are independent contractors under the statute.

Appellants' theory of standing is built on broad, bare assertions that are neither particularized nor certain.[13] Because Appellants lack standing, this Court and the district court lack jurisdiction over their claims. *See Lujan*, 504 U.S. at 559; *see also Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1210 (8th Cir. 2021).[14]

## II.   *DATAPHASE* FACTORS AND STANDARD OF REVIEW.

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). Its primary function is to preserve the status quo, until upon final hearing, a court may grant full effective relief. *Wilbur-Ellis Co., LLC v. Erikson*, 103 F.4th 1352, 1355 (8th Cir.

---

[13]  Appellants MNABC and BAM assert standing based on their members. Because the individual Appellant and the only identified MNABC and BAM members do not have standing, neither do Appellants MNABC and BAM. *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128 (8th Cir. 2016).

[14]  Subject-matter jurisdiction may be raised for the first time on appeal. *City of Kansas City, Mo. v. Yarco Co.*, 625 F.3d 1038, 1040 (8th Cir. 2010).

Appellate Case: 25-1480     Page: 34     Date Filed: 05/23/2025 Entry ID: 5519829

2024). The party seeking preliminary injunctive relief "bears the burden of establishing the necessity of this equitable remedy." *General Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009). In determining whether to grant a preliminary injunction, the district court must consider (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). When deciding whether to grant a preliminary injunction, courts ask "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Morehouse Enter., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1016 (8th Cir. 2023).

A party seeking to enjoin legislation bears the heavy burden of establishing as a threshold matter that it is likely to succeed on the merits. This Court reasoned in *Planned Parenthood of Minn., N.D., S.D. v. Rounds* as follows: "[A] more rigorous standard 'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" 530 F.3d 724, 732 (8th Cir. 2008) (emphasis added) (internal citation omitted).

22

On appeal, this Court reviews the district court's factual findings for clear error, the legal conclusions de novo, and "the ultimate decision to [deny] the injunction" for an abuse of discretion. *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 689-90 (8th Cir. 2003).[15]

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT CONCLUDED APPELLANTS DID NOT SATISFY THE *DATAPHASE* FACTORS.

Under the rigorous standard that applies to statutory challenges, the district court did not abuse its discretion when it concluded Appellants were unlikely to succeed on the merits of their vagueness and Excessive Fines claims. The vagueness claim is unlikely to succeed because the statute provides fair notice of what it prohibits and does not encourage arbitrary enforcement. Indeed, without the 14-factor test, Appellants would be subjected to a less clear common law test. Further, applying principles of statutory interpretation, the statute is not vague. Similarly, the Excessive Fines claim is unlikely to succeed because the statute has remedial applications, and this claim is not cognizable in a pre-enforcement posture. Finally, the district court did not abuse its discretion when it concluded Appellants

---

[15]  Appellants do not argue that any of the district court's factual findings were clearly erroneous. The closest they come is to argue that the "district court erroneously found, 'The only harm Plaintiffs allege is economic harm.'" (App. Br. 54 n.13.) That's not a challenged finding so much as Appellants' disagreement with the district court's interpretation of the record. In any event, it was not clearly erroneous. (*See, e.g.*, App. 38, at ¶ 13; R. Doc. 2, at ¶ 13 (discussing financial harm).)

Appellate Case: 25-1480     Page: 36     Date Filed: 05/23/2025 Entry ID: 5519829

did not meet the remaining *Dataphase* factors and denied the motion for preliminary injunction and temporary restraining order.

**A.** **The district court did not abuse its discretion when it concluded Appellants were unlikely to succeed on the merits of their void-for-vagueness challenge.**

**1.** **The standard.**

Although Appellants bring a facial challenge, vagueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand. *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993) (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)); *see also United States v. Bramer*, 832 F.3d 908, 909-10 (8th Cir. 2016) (a facial void-for-vagueness claim fails when the as-applied challenge fails).[16] Accordingly, the Court should analyze whether the statute violates the due process clause as applied to the specific facts of this case. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7 (1982). This presents a problem for Appellants as Appellants have not alleged a scintilla of evidence that the statute or its predecessor has been enforced in a discriminatory manner. Thus, a party must show that the challenged statute "lacks

---

[16] *United States v. Stupka*, 418 F. Supp. 3d 402 (N.D. Iowa 2019), has a helpful discussion of when facial void-for-vagueness challenges are permissible: (1) when a fundamental right such as the First Amendment is threatened or (2) when there is a "high risk that a law is unconstitutionally vague under the second prong of the void-for-vagueness test." *Id.* at 408-09. Here, Appellants' claim fails regardless of how it is characterized because they cannot show the statute is vague as applied to any specific situation that any Appellant faces. *See Bramer*, 832 F.3d at 909-10.

specificity as to [their] own behavior and not as to some hypothetical situation" in order to prevail on a void-for-vagueness challenge. *United States v. Trudell*, 563 F.2d 889, 892 (8th Cir. 1977).

Here, Appellants have not alleged any specific behavior that they engage in or intend to engage in that is impacted by the statute. Even if a broad reading of the statute leaves certain situations up to interpretation, Appellants have failed to establish that the statute is unconstitutionally vague as applied to their actual conduct. *See Hill v. Colorado*, 530 U.S. 703, 733 (2000) (speculation about possible vagueness in hypothetical situations "will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." (quotation omitted)).

In keeping with due-process principles, a law is void for vagueness "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "A two-part test determines whether a statute is vague: 'The statute must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement.'" *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 886 (8th Cir. 2021) (quoting *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009)). "'[F]lexibility and reasonable breadth' are acceptable as long as it is 'clear what the [rule] as a whole prohibits.'" *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345 (8th Cir. 2020) (quoting *Grayned*, 408 U.S. at 110).

Appellate Case: 25-1480    Page: 38    Date Filed: 05/23/2025 Entry ID: 5519829

## 2. The statute provides adequate notice.

The vagueness challenge is unlikely to succeed because the statute provides adequate notice. Appellants argue several words are vague without discussing how courts interpret statutes. Indeed, as to each so-called vague word or phrase, Appellants make little attempt to ascertain the meaning. True, none of the words or phrases identified by Appellants are defined by Chapter 181, but that does not end the analysis. *See Boos v. Barry*, 485 U.S. 312, 332 (1988) (considering word in context, noting the statute "communicates its reach in words of common understanding," and concluding the statute was not vague although it did not define the word "peace"); *see also Nelson v. Schlener*, 859 N.W.2d 288, 293 (Minn. 2015) (there is no need for statutory definitions when the common meaning suffices).

Chapter 645 guides the interpretation of Minnesota statutes. Words and phrases "are construed according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1); *see also Matter of Surveillance and Integrity Review*, 996 N.W.2d 178, 186 (Minn. 2023) (consulting a dictionary to determine meaning of a word). "[T]echnical words and phrases and such others as have acquired a special meaning, or are defined in this chapter, are construed according to such special meaning or their definition." Minn. Stat. § 645.08(1).

Additionally, businesses and their trade associations "can be expected to consult relevant legislation in advance of action. . . . [T]he regulated enterprise may

26

have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Hoffman Estates*, 455 U.S. at 498. In fact, DLI has released publicly available documents to help the construction industry understand and comply with the statute.[17]

With these principles in mind, the words and phrases Appellants identify are not constitutionally vague.

First, Appellants argue "main expenses and costs related to" is vague. (App. Br. 35.) But the Minnesota Court of Appeals has already interpreted a similar phrase in a previous version of the statute. *See Nelson v. Levy*, 796 N.W.2d 336, 340 (Minn. Ct. App. 2011) (holding the scope of the contract determines main expenses). Appellants cite *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992), where this Court held in a First Amendment challenge that the term "violence" was unconstitutionally vague. That case differs because the Minnesota Court of Appeals has interpreted the relevant language, and there is no First Amendment interest at play. As explained by this Court, *Miller* required a specific definition of "sexual conduct" in either statute or as construed by state courts. *Id.* (citing *Miller v. California*, 413 U.S. 15, 24 (1973)). The definition of "violence"

---

[17] *See* App. 165-176; R. Doc. 12, at 105-116; *Employee Misclassification*, Minn. Dep't of Labor & Industry, https://www.dli.mn.gov/sites/default/files/pdf/presentation_employee_misclassification.pdf, *archived at* https://perma.cc/L8KD-JM2T.

Appellate Case: 25-1480    Page: 40    Date Filed: 05/23/2025 Entry ID: 5519829

was critical in *Video Software Dealers* because it affected First Amendment protections: obscene material is unprotected by the First Amendment. *Miller*, 413 U.S. at 23.

Second, Appellants argue that the phrase "commission or per-job or competitive bid basis and not on any other basis" is unconstitutionally vague. (App. Br. 37.) This is a plain language term with common meaning. Job is defined as "a specific piece of work to be done for a set fee." *The American Heritage Dictionary of the English Language* 969 (3d ed. 1992). And this phrase has been interpreted by Minnesota courts. *See St. Croix Sensory Inc. v. Dep't of Emp. & Econ. Dev.*, 785 N.W.2d 796, 798 (Minn. Ct. App. 2010) (determining workers were paid "per job" because they were "paid for each session," where "sensory assessors [] perform[ed] odor evaluations"). Whether a particular arrangement is "per job" may depend on the nature of the agreement or contract. Rather than point to a specific contract and specific project, Appellants pose unspecific hypotheticals.

Third, Appellants claim that the common business term "invoice" is vague. (App. Br. 38.) An invoice is "a detailed list of goods shipped or services rendered, with an account of all costs; an itemized bill." *The American Heritage College Dictionary* 715 (3d ed. 1993) (defining "invoice"); *The American Heritage Dictionary of the English Language* 949 (3d ed. 1992) (same). Invoice is a common

28

business term, and it was a word that existed in the last version of the statute.[18] It is not vague.

Fourth, Appellants argue that the phrase "identifies the specific services to be provided or performed under the contract" is vague. (App. Br. 39.)[19] But every single one of the words in the statutory phrase has common and well-defined meaning, including "identifies," "specific," and "services." Appellants' only argument for why it is vague is that someone provided a non-specific example to DLI for its FAQs and DLI said it would need more information. Specifically, the FAQ says:

> Where written contracts reference and incorporate other documents, such as plans and specifications, those documents may be examined together as part of the written contract to determine if the independent contractor requirements are satisfied.

(App. 174; R. Doc. 12, at 114.) In this lawsuit, Appellants do not present any of those documents, so this Court is left in much the same position—in hypothetical territory.

Fifth, Appellants argue that "realize additional profit or suffer a loss" is vague. (App. Br. 39.) But profit and loss are common phrases that are not unique to this statute. *See The American Heritage Dictionary of the English Language* 1446 (3d ed.

---

[18] *See* Minn. Stat. § 181.723, subd. 4(b)(2) (2023) (invoice).

[19] Below, Appellants did not argue this language was vague, so this argument is waived on appeal. *Sanzone v. Mercy Health*, 954 F.3d 1031, 1045 (8th Cir. 2020). Instead, they argued the need for a *written* contract was contrary to common industry practice. (R. Doc. 11, at 14.)

Appellate Case: 25-1480     Page: 42     Date Filed: 05/23/2025 Entry ID: 5519829

1992) (defining profit as "[t]he return received on a business undertaking after all operation expenses have been met"). If a worker is paid per hour and the pay is unaffected by how profitable (or not) the company is, then the worker does not realize "additional profit or suffer a loss."

Sixth, Appellants argue the statute does not define the length of the employment relationship. (App. Br. 40.) Persons of ordinary intelligence understand, for example, that if a subcontractor's worker is an employee of a general contractor pursuant to Section 181.723, subdivision 4(b), the general contractor must treat that worker as an employee for however long the worker is providing or performing construction or improvement services for the general contractor. Further, if there was no fourteen-part test, this is still something a court would have to determine. An employment relationship affects access to workers' compensation, and unemployment insurance, among other things. Courts can and do determine employment relationships even when statutes do not expressly state the length.[20]

---

[20] In *D.C. v. City of St. Louis, Mo.*, 795 F.2d 652, 654 (8th Cir. 1986), plaintiffs had been arrested and charged with violating an ordinance criminalizing "indecent or lewd act of behavior." This Court was persuaded by an Iowa Supreme Court decision that concluded "although the words 'lewdness' and 'indecent' have often been defined, the very phrases and synonyms through which meaning is purportedly ascribed serve to obscure rather than clarify those terms." *State v. Kueny*, 215 N.W.2d 215, 217 (Iowa 1974). In other words, "the common usage of the terms 'indecent' and 'lewd' has eroded the effective employment of such terms" in statutes unless there are statutory definitions. *D.C.*, 795 F.2d at 654. Here, Appellants do not point to any common usage of words that has "eroded" the effective use of the (Footnote Continued on Next Page.)

### 3. The statute contains neutral limitations that prevent arbitrary enforcement.

The vagueness challenge is also unlikely to succeed because the statute does not lend itself to arbitrary enforcement.

"In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Hoffman Estates*, 455 U.S. at 495. Because textual components such as these impose "neutral limitations" on the officials who enforce and apply a statute, *Kolender v. Lawson*, 461 U.S. 352, 360 (1983), their inclusion brings into focus the precise conduct that a statute proscribes and fairly narrows that statute's reach.

In this matter, the statute contains neutral limitations in the form of judicial review that restrict how Appellees may enforce the statute. A violation of Section 181.723 may result in DLI issuing a compliance order under Section 177.27, subd. 4.[21] Subdivision 4 reads in relevant part:

---

terms in statutes. *Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980), is likewise distinguishable as this Court observed the common understanding of "any pipe or other object suitable to be used for smoking" is that the words describe tobacco smoking accessories and not drug paraphernalia. *Id.* at 29. Appellants do not offer competing common understandings of terms they allege are unconstitutionally vague. For example, Appellants do not offer a common understanding of "profit" or "loss" that renders the statute vague. (*Id.* at 39-40.)

[21] Section 326B.081, subd. 3, also incorporates the statute in its definition of applicable law. Pursuant to Section 326B.082, subd. 7(a), and 326B.082, subd. 11(b)(1)-(2), DLI may issue licensing or administrative orders for violations of (Footnote Continued on Next Page.)

31

> The department shall serve the order upon the employer or the employer's authorized representative in person or by certified mail at the employer's place of business. An employer who wishes to contest the order must file written notice of objection to the order with the commissioner within 15 calendar days after being served with the order. **A contested case proceeding** must then be held in accordance with sections 14.57 to 14.69 or 181.165. If, within 15 calendar days after being served with the order, the employer fails to file a written notice of objection with the commissioner, the order becomes a final order of the commissioner.

Minn. Stat. § 177.27, subd. 4 (emphasis added). This section limits the discretion of DLI to enforce the statute as the employer may challenge the agency's determination through the normal chapter 14 administrative process. In other words, the employer may bring their case before an administrative law judge, present evidence, and cross-examine witnesses or otherwise litigate the agency's decision. *See* Minn. Ch. 14.57-62. The employer may then appeal the administrative law judge's decision directly to Minnesota's appellate courts. Minn. Stat. § 14.63-69. In short, there are constitutional safeguards in the form of judicial review that prevent arbitrary enforcement of the statute. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230 (1990) (failure to provide prompt judicial review of First Amendment regulation renders ordinance unconstitutional); *see also Deja Vu of Nashville, Inc. v. Metro. Gov't of*

---

Section 181.723. *See also* Minn. Stat. § 326B.082, subd. 8 (administrative proceedings to contest the administrative order); Minn. Stat. § 326B.082, subd. 12 (providing for contested-case hearings under chapter 14); Minn. Stat. § 326B.083, subd. 3(c) (addressing administrative and licensing orders with penalties and an administrative law judge's review).

*Nashville*, 274 F.3d 377, 401 (6th Cir. 2001) (safeguards were inadequate where neither ordinance nor state law provided for prompt judicial review).

Appellants argue the administrative process is irrelevant. (App. Br. 41-42.) That argument ignores binding precedent in this Circuit. *See, e.g.*, *Metro. Omaha Prop. Owners Ass'n*, 991 F.3d at 887 (the right to an appeal undercuts an argument a statute lends itself to arbitrary enforcement).[22]

### 4. Appellants' actual disagreement is that the statute is too specific.

There is no dispute that construction companies have different obligations with respect to employees versus independent contractors (related to benefits, entitlement to workers' compensation insurance, etc.). Absent the 14-part test, companies and the courts will still have to assess whether a person is an employee or not. To do so, courts will adopt multi-factor tests. Such tests are classic court-created tests, the scope of which are teased out through litigation. For example, Minnesota courts have used five factors to determine whether a worker is an employee or independent contractor: "(1) The right to control the means and manner of performance; (2) The mode of payment; (3) The furnishing of materials and tools;

---

[22] Contrary to Appellants' suggestion that the statute lacks an enforcement mechanism containing standards, (App. Br. 25-26), it states "[t]his section may be investigated and enforced under the commissioner's authority under state law." Minn. Stat. § 181.723, subd. 12(h); *see also* Minn. Stat. § 177.27, subd. 4 (referring to Section 181.723); *supra* n.8.

Appellate Case: 25-1480    Page: 46    Date Filed: 05/23/2025 Entry ID: 5519829

(4) The control of the premises where the work is done; and (5) The right of the employer to discharge." *Unzen v. City of Duluth*, 683 N.W.2d 875, 881 (Minn. Ct. App. 2004), *rev. denied* (Minn. Oct. 27, 2004) (applying test in personal injury case to determine whether the worker was an agent—i.e., employee—or an independent contractor); *see also Guhlke v. Roberts Truck Lines*, 128 N.W.2d 324, 326 (Minn. 1964) (discussing same factors in workers' compensation case). Whether a worker is an independent contractor or an employee is a question of fact. *Holzemer v. Minn. Milk Co.*, 259 N.W.2d 592, 593 (Minn. 1977). Evidence that an employer controls the means and manner of performance tends to prove an employment relationship. *Hammes v. Suk*, 190 N.W.2d 478, 481 (Minn. 1971). "[T]he furnishing of materials and tools by the employer" is also evidence of an employment relationship. *Id.*[23]

Employing a common law multi-factor test such as the one discussed above would create *less* certainty but would advantage large well-resourced companies that can hire attorneys. In other words, the 14-factor test is specific. Appellants' real problem with the test is *not* that it is vague; the real problem is that it is *specific* and will make it difficult for them to ignore their obligations.

---

[23] Courts have also adopted employer tests under the FLSA. *See, e.g.*, *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 301 (1985) (discussing the "economic reality" test).

Appellate Case: 25-1480    Page: 47    Date Filed: 05/23/2025 Entry ID: 5519829

****

In sum, Appellants are unlikely to succeed on either prong of the void-for-vagueness analysis. The statute sufficiently defines proscribed conduct "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357. Accordingly, the statute satisfies the constitutional requirements of due process, and Appellants' constitutional challenge should be rejected.

### 5. Heightened scrutiny does not apply.

The district court was correct not to apply heightened scrutiny when determining whether the statute is unconstitutionally vague because the statute is inherently civil, not criminal in nature. The statute is found in Chapter 181 of the Minnesota Statutes, under the subsection "Labor, Industry." Chapter 181 is titled "Employment." If the statute was criminal in nature, it would be found in Section 609, the Criminal Code. *See, e.g.*, *State v. Newell*, Index # 1, Case No. 27-CR-23-445 (Henn. Cnty. Dist. Ct. Jan. 6, 2023) (charging subcontractor under Section 609.52 for paying employees at a rate lower than the required prevailing wage); *see also* Minn. Stat. § 609.52, subd. 1(13) (wage theft occurs when an employer engages in certain conduct "with intent to defraud"). Furthermore, the statute does not have a prohibitory or stigmatizing effect to render it quasi-criminal; rather, the statute gives the Commissioner the authority to impose fines when violations occur. *Hoffman Estates*, 455 U.S. at 489, 499 (prohibitory or stigmatizing

35

effect renders statute quasi-criminal). The statute is clearly aimed at regulating economic behavior, not protecting society or preventing crime.

When courts evaluate a vagueness challenge to economic regulations like the statute, they apply a "less strict vagueness test." *Id.* at 498*; Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir. 1985) (quoting *Hoffman Estates*, 455 U.S. at 498–99) ("[G]reater tolerance is permitted with legislation imposing only civil rather than criminal penalties." (internal quotation marks omitted)). There are two justifications for a less strict test for economic or business regulations. First, "its subject matter is often more narrow, and [ ] businesses . . . can be expected to consult relevant legislation in advance of action." *Chalmers*, 762 F.2d at 757 (citation omitted). Second, "the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id*. (citation omitted). Here, the statute's subject matter is narrow: to regulate employers that use independent contractors in the construction industry. Appellants clearly consulted with the legislature in advance of the statute's passage as they testified to the Legislature.[24] Finally, Appellants are able to ask about the meaning of the statute's regulation by asking DLI questions on a case-by-case basis or by appealing violations through the administrative process outlined in chapter 14.

---

[24] House Labor & Industry Finance & Policy Committee, March 5, 2024, *available at* https://www.youtube.com/watch?v=Bg2FIliLG-k (starting at 54:59; *see also* 56:00-56:13; 57:50-58:29).

In sum, because the statute regulates purely economic activity, the Court should apply a less strict vagueness test. *Hoffman Estates*, 455 U.S. at 498.

Appellants argue that the statute is criminal in nature because violations may lead to criminal prosecution under *different* statutes. (App. Br. 33.) But the statute that Appellants are challenging does *not* impose criminal penalties for violations. Section 181.721, subdivisions 1, 4-5, and Section 181.74, subdivision 1, are different statutes that may carry criminal penalties. Section 181.74, subdivision 1,[25] is a general wage payment statute that requires employers to make timely payments to their employees. Section 326B.082, subdivision 16, makes a violation of Section 181.723 a misdemeanor.

Appellants' fears about criminal enforcement of *other* statutes only confirms that the challenged statute is *not* criminal. Indeed, the Commissioner does not have criminal prosecutorial authority. At most, the Commissioner could impose fines, which employers are able to challenge with the same administrative protections and restrictions as any other administrative decision. *See* Minn. Stat. § 14.045, subds. 1-3.[26]

---

[25] Counsel for Appellees were unable to find a single instance of State criminal prosecution under Section 181.74, subd. 1, since 2007.

[26] Further, the Attorney General's wage theft activity is civil. *See In the Matter of Arise Virtual Solutions*, Settlement Agreement (unfiled) (Ramsey Cnty.), https://www.ag.state.mn.us/Office/Communications/2024/docs/Arise_AoD.pdf, (Footnote Continued on Next Page.)

Because the statute is clearly a civil, rather than a criminal, regulation, the district court did not abuse its discretion when it declined to apply heightened scrutiny.

**B.    The district court did not abuse its direction when it concluded Appellants are unlikely to succeed on their Excessive Fine claim.**

Appellants also argue that enforcement of Minnesota's construction misclassification statute should be enjoined because the fines that could be imposed violate the Eighth Amendment's prohibition on excessive fines. This argument fails for two reasons. First, it is questionable whether the Eighth Amendment applies to the statute's fines. But even if it did apply, on a pre-enforcement basis there is simply no way for a court to conduct the fact-intensive inquiry necessary to determine that a fine is excessive. This Court should not assume that future fines imposed would violate the Constitution.

**1.    The standard.**

A facial challenge to a statute's constitutionality is the "most difficult challenge to mount successfully." *United States v. Rahimi*, 602 U.S. 680, 708 (2024) (Gorsuch, J., concurring) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "'A facial challenge is really just a claim that the law or policy at issue is unconstitutional in *all* its applications,' regardless of the individual

---

unless a criminal matter is referred to the Attorney General by a county attorney. Minn. Stat. § 8.01.

circumstances." *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024) (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)). To prevail on this sort of challenge, Appellants must show that "no set of circumstances" exist in which the statute can be applied without violating the relevant constitutional principle. *Salerno*, 481 U.S. at 745.

Because there are no "individual circumstances" for the Court to consider, *Veasley*, 98 F.4th at 909, this Court should treat Appellants' lawsuit as advancing a facial challenge. *See also Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quotation omitted) (a representative suit brought on behalf of thousands of organizations in this way necessarily claims that "a substantial number of [the law's] applications are unconstitutional").

> **2.** **The Eighth Amendment is not implicated because the statute's fines are civil and required to be tailored to specific conduct.**

The rationale of the Eighth Amendment's prohibition on excessive fines is to prevent the government from enriching itself through punishments designed without regard for the goals of retribution and deterrence. *See Harmelin v. Michigan*, 501 U.S. 957, 979 n.9 (1990). Payments to the government are subject to the application of the Excessive Fines Clause when they are imposed as punishment for an offense. *Austin v. U.S.*, 509 U.S. 602, 609-10 (1993). Punishments are those that serve retributive or deterrent purposes rather than primarily remedial purposes. *Id*.

39

Reimbursing the government for losses is remedial. *United States v. Bajakajian*, 524 U.S. 321, 342 (1998). Section 181.723 has remedial applications and could be imposed based on the costs incurred by the government in pursuing the action. It also, as the district court noted, is required to be tailored to specific conduct under Section 14.045, subd. 3, and is not mandatory.

Like the early customs statutes and civil *in rem* forfeitures discussed in *Bajakajian*, then, the misclassification statute's system of fines is not penal and not subject to the Excessive Fines Clause. 524 U.S. at 340-43.

### 3. This Court should decline to hold that hypothetical future fines would be unconstitutionally excessive.

Even if the statute were punitive, the Court cannot analyze an Excessive Fines claim with no record. Appellants did not cite a single pre-enforcement Excessive Fines case at the district court, and they do not cite one here. (Add. 16; App. 219; R. Doc. 18, at 10.) There is good reason for that; Excessive Fines analysis is "fact-intensive." *United States v. Bieri*, 68 F.3d 232, 236 (8th Cir. 1995). A court must look at the size of the fine compared to the gravity of the offense to see if it is proportional. *See Bajakajian*, 524 U.S. at 334. Proportionality is based on ability to pay, sanctions for comparable misconduct, the reprehensibility of the conduct, etc. *See United States v. Aleff*, 772 F.3d 508, 512 (8th Cir. 2014). But here, without any record, the Court cannot analyze any of those facts.

Appellants try to evade the obvious record issues by speculating about being sanctioned with the largest possible fine and simultaneously speculating about the innocence of their conduct. Appellants' speculation about a yet-to-be-imposed fine, based on yet-to-occur conduct, cannot possibly justify enjoining all enforcement of the statute on Excessive Fines grounds.[27]

The challenges of a proportionality analysis with few or no facts can be seen in other contexts.[28] In a False Claims Act case regarding Medicare fraud, the Seventh Circuit noted that "it is impossible to know whether the penalty is constitutionally 'excessive' without knowing what conduct the fine penalizes." *United States v.*

---

[27] In any event, Appellants' speculation is unmoored from the statute's text. The statutory scheme contains a built-in proportionality requirement because Minnesota law sets a limit on all fines subject to an agency's discretion, including fines imposed pursuant to Minn. Stat. § 181.723. The proportionality limit requires agencies to consider factors such as the economic benefit gained by committing the violation, the willfulness of the violation, the damage to humans, animals, and natural resources, etc. Minn. Stat. § 14.045.

[28] The purposes for other monetary proportionality analyses may differ, leading to different determinations regarding when fines or damages are disproportionate. *Harmelin*, 501 U.S. at 979 n.9 (the Excessive Fines Clause scrutinizes punitive fines to ensure the State does not derive a financial benefit out of proportion to penal goals); *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907-08 (8th Cir. 2012) (noting that statutory damages don't have the same "fair notice" concerns that jury-awarded punitive damages do); *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 274-75 (1989) (holding that punitive damages awarded to a private party are not fines subject to the Eighth Amendment). But the analyses depend on consideration of similar types of facts. *See Grant on behalf of United States v. Zorn*, 107 F.4th 782, 798 (8th Cir. 2024), *pet. for cert. docketed* (Feb. 7, 2025); *United States v. Rogan*, 517 F.3d 449, 454 (7th Cir. 2008).

41

*Rogan*, 517 F.3d 449, 454 (7th Cir. 2008). In a case regarding statutory damages for online distribution of copyrighted music, this Court rejected an argument that a jury's award of statutory damages should be struck down because a hypothetical award extrapolated from it would be "obviously excessive and unreasonable." *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 910 (8th Cir. 2012). The Court pointed out that the hypothetical future award could be left to a future fact finder. "If and when a jury returns a multi-million dollar award for noncommercial online copyright infringement, then there will be time enough to consider it." *Id*. Similarly, if Appellees ever sought a disproportionately high fine for relatively innocent conduct, a future court can consider the fine with the benefit of a full record. There is no reason to assume that future courts will permit unconstitutionally excessive fines and no reason to find that the statute is facially invalid just because it theoretically allows some penalties that would be unconstitutional as applied to some conduct.[29]

---

[29] Appellants argue that a pre-enforcement action may be sustained when a fundamental right is at issue. (App. Br. 47.) They cite *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-60 (2014). They argue that they have an explicit, fundamental right to be free of excessive fines under the Eighth Amendment, so like the plaintiffs in *Driehaus*, they intend to engage in a constitutionally protected course of conduct that is being chilled. But *Driehaus* involved the First Amendment; it wasn't about Excessive Fines whatsoever. Further, they do not cite any case for the proposition that this case involved a fundamental right. Understood properly, Appellants' argument here is actually that the potential maximum fines at issue here are large enough to modify their conduct. (App. Br. 47.) What is being "chilled" by
(Footnote Continued on Next Page)

Appellate Case: 25-1480     Page: 55     Date Filed: 05/23/2025 Entry ID: 5519829

**C.** **The district court did not abuse its discretion when it concluded Appellants did not satisfy the remaining *Dataphase* factors.**

Because the Appellants are unlikely to succeed, the district court could have denied the injunction on that basis alone. But the remaining *Dataphase* factors all weigh against issuing preliminary injunctive relief too.

**1.** **Appellants will not suffer irreparable harm from the denial of an injunction.**

Appellants object to the district court order concluding that the only potential harm they allege is economic. (App. Br. 54 n.13.) They argue that their constitutional rights are being infringed and that this demonstrates an irreparable injury. Just as with the argument above regarding the Eighth Amendment's prohibition on excessive fines, Appellants conflate their arguments that the statute is unconstitutional with the analysis of whether fundamental constitutional rights are being infringed while the statute is in effect. Any time a statute's constitutionality is challenged there are constitutional rights at issue. That does not create irreparable harm on its own. In particular, Appellants cite case law regarding medical care that are simply in a different category to the type of harm at issue here. (*Id*. at 54-55.)

---

the potential for fines is not the exercise of any fundamental right, but rather the ability to engage in business in precisely the same way they have in the past. But that is just how economic regulation works. If Appellants' theory was the standard, all state regulation of economic activity would be curtailed.

43

The district court was correct to conclude that the harm from the denial of an injunction is limited to economic harm, and economic harm does not typically qualify as irreparable harm. *Packard Elevator v. I.C.C.*, 782 F.2d 112, 114 (8th Cir. 1986). That is because monetary harm can be redressed.

Appellants attempt to avoid this conclusion by arguing because of Eleventh Amendment immunity their potential monetary losses here do create irreparable harm. They argue that they cannot sue to retroactively recover expenses incurred in trying to comply with the statute if the statute is later found to be unconstitutional. But they do not provide concrete, calculable, or definite estimates of how much it would cost to comply with the statute, which is fatal to their argument. *See id*. ("First, the injury must be both certain and great; it must be actual and not theoretical.")

Instead, Appellants yet again speculate that Appellees will levy crippling fines, forcing them to lay off employees or go bankrupt. This type of loss, however, is clearly avoidable and does not create irreparable harm. Even if Appellants eventually faced actual imminent enforcement action, they could raise defenses during the available administrative proceedings with available judicial review. Minn. Stat. § 14.63. They could also seek an injunction at that point, prior to paying any fine. These possibilities demonstrate that there is no irreparable injury. *Cf. Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 293-95 (6th Cir. 1991).

Appellate Case: 25-1480     Page: 57     Date Filed: 05/23/2025 Entry ID: 5519829

Appellants have an adequate remedy at law through the administrative process and the appellate process.

### 2. The balance of equities and the public interest support denial of an injunction.

The third and fourth factors—balance of harms and public interest—merge when the government is the non-movant. *Morehouse*, 78 F.4th at 1018. When applying the balance of harms factor, the key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1347 (8th Cir. 2024). The purpose is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward. *Id*.

Here, Appellees have a sovereign interest in enforcing a democratically enacted civil statute. Entry of an injunction would severely harm the government and the workers who depend on Appellees to protect their rights. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). The monetary interests of a group of contractors should not outweigh the benefits to all Minnesotans.

45

## CONCLUSION

For these reasons, the Court should affirm because the district court did not abuse its discretion when it denied the preliminary injunction.

Dated: May 23, 2025        Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


<u>s/ **Janine Kimble**</u>
JANINE KIMBLE (MN #0392032)
CHRISTY HALL (MN #0392627)
MATTHEW MCGUIRE (MN #0402754)
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2128
(651) 757-1415
janine.kimble@ag.state.mn.us

*Attorneys for Defendants-Appellees*

|#6044294-v3

46

## CERTIFICATE OF COMPLIANCE
## WITH FRAP 32

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,321 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.


s/ **Janine Kimble**
JANINE KIMBLE
Assistant Attorney General

47

## CERTIFICATE OF COMPLIANCE
## WITH 8th Cir. R. 28A(h)(2)

The undersigned, on behalf of the party filing and serving this brief, certifies

that the brief has been scanned for viruses and that the brief is virus-free.

s/ **Pam Hewitt**
Pam Hewitt
Administrative Assistant

48